WILLIAM W. HENDERSON *et al.*, Respondents, *v.* SARAH DICKEY *et al.*, Appellants.

1. *Lands and land titles — Carondelet, town of, deeds by — Evidence.* — Under the provisions of an act authorizing the corporation of Carondelet to sell and convey certain lots of ground, approved February 13, 1833 (2 Terr. Laws, 393), the town of Carondelet was expressly authorized to convey certain particular lots of ground therein mentioned, and a conveyance executed pursuant to that law is admissible in evidence.

2. *Fraudulent conveyances — Property purchased by an insolvent with his own money, in the name of another, void as to purchasers.* — If a person who is insolvent or in failing circumstances purchases property with his own money, and has it conveyed by his vendor to a third party, that conveyance is void as to subsequent purchasers of the property from the insolvent. The property continues to be his, and if he conveys it his vendee will acquire a good title.

3. *Equity — Decree may be for any relief consistent with the allegations of the pleading.* — Under our statutes the court in an equity case may give any relief consistent with the allegations in the pleading, without regard to what is asked.

4. *Practice, civil — Pleading — Equity — Ejectment — Mingling of equitable and legal causes of action in the same count improper — Such causes may be embodied in the same petition.* — It is improper to mingle a cause of action which is purely equitable with one that is strictly legal in the same count in a petition, and proceed to try them together before a chancellor. But it does not therefore follow that in all cases a party must first get his decree for title and then bring a separate and independent action in ejectment to obtain possession. A plaintiff may unite in the same petition several causes of action, whether they be legal or equitable or both, if they arise out of the same transaction and are connected with the same subject of action. But when causes of action are thus united they must be separately stated, with the relief sought in each cause of action, in such manner that they may be intelligibly distinguished, for they require separate trials and separate judgments. Their joinder in the same count would be fatally defective. (Wagn. Stat. 1012, § 8; Peyton v. Rose, 41 Mo. 257, cited and explained.)

11—VOL. L.

Henderson et al. v. Dickey et al.

*Appeal from St. Louis Circuit Court.*

*Glover & Shepley*, for Henderson's heirs, appellants, and respondents.

(1) The misdescription in the deeds of Taylor to Elizabeth Wasson is clearly made out. Taylor intended to convey the lots in dispute. He had no claim to any other. (2) The deed of Wasson and wife to Henderson passed the title to Henderson, the prior conveyance to Taylor notwithstanding. The property belonging in fact to Wasson, and he having paid for it and had it conveyed to Taylor to defraud his creditors, Wasson's conveyance to one of those creditors, in payment of a debt, passed the title. (Gen. Stat. 1865, p. 439, §§ 2, 3.) So that, both on the ground of the mistake and the fraud, the judgment of the Circuit Court at Special Term is correct. (Howe *et al.* v. Waysman, 12 Mo. 169.)

On the appeal of Henderson's heirs, the only point made by appellants is that the court erred in refusing to put the plaintiffs in possession of the property decreed to them. Where title is vested in plaintiff the statute expressly gives power to award possession. This was always the practice in chancery. (Gen. Stat. 1865, p. 683, §§ 28, 29; 1 Barb. Ch. 441; Valentine v. Teller, Hopk. Ch. 422; Kershaw v. Thompson, 4 Johns. Ch. 609; 15 Ves. Ch. 180; Ludlow v. Lansing, Hopk. Ch. 231.)

*Lewis & Daniel*, for appellants.

I. Neither of the deeds offered, to show a conveyance from the town of Carondelet, is countersigned by the recorder of said town, as required by the special act authorizing corporation of Carondelet to sell and convey certain lots of ground, approved February 13, 1833. (Laws of Mo. 1832–3, p. 16.)

II. The court gave both a decree vesting title and a judgment for possession of real estate, which it plainly had no power to do. The courts of this State have fixed beyond peradventure the principle that a bill in equity is not a proper remedy to recover possession of real estate. (Magwire v. Tyler *et al.*, 47 Mo. 115, and cases cited.)

III. The only consideration, if any, on which said conveyances were made was a supposed secret trust in favor of Wasson, arising out of the conveyance of the same property to Joseph D. Taylor by Bowlin and wife, for the purpose of defrauding the creditors of Wasson, which consideration this court, when this cause was before it formerly, said was no consideration sufficient to authorize a court of equity to reform these deeds. (Henderson v. Dickey, 35 Mo. 120, and cases cited.)

WAGNER, Judge, delivered the opinion of the court.

This case was formerly in this court (35 Mo. 120), and it was then reversed and remanded because the case, as then made by the proofs, did not conform to that stated in the petition, and because the court was of the opinion that no sufficient reason appeared for the interference of a court of equity. After the case was remanded, the plaintiffs amended their petition, and upon a retrial they obtained a decree vesting in them the title to the property.

The case shows that plaintiffs claim to derive title from one J. W. Wasson and wife. The land in controversy was originally owned by the town of Carondelet, and by conveyances of the town and its grantees it was finally vested in Bowlin and wife. Bowlin and wife afterwards deeded it to J. D. Taylor, and he undertook to convey it to Elizabeth Wasson, wife of J. W. Wasson, but there was a misdescription in the deed. Subsequently Wasson and wife conveyed the same property to the plaintiff's ancestor in payment of a debt; and Mrs. Taylor, who refused to join in the deed made by her husband to Mrs. Wasson, relinquished her interest to him. The defendants, before the bringing of this suit, took possession of the premises and claimed to hold them as the heirs of Taylor. The mistake in the description of the property contained in Taylor's deed was, I think, clearly and satisfactorily proved. There was no error in the court's admitting the conveyances made and executed by the town of Carondelet. The town was expressly authorized to sell and convey the lots, and the deed sufficiently conformed to the provisions of the law. (2 Terr. Laws, 393; Reilly v. Chouquette, 18 Mo. 220; Tigh v. Chouquette, 21 Mo. 233.)

The main grounds on which plaintiffs rest their case are that while Taylor nominally held the title, the real title was in Wasson, and that the conveyance of Wasson and wife transferred the whole title to plaintiff's ancestor. Wasson was the principal witness for the plaintiffs on the hearing of the cause, and he testified that he originally purchased the lots from Bowlin and wife, and had them conveyed to Taylor, his brother-in-law, till he could get out of his difficulties. He was in debt and could own no property in his own name. The understanding between Taylor and himself was that when he got out of his difficulties Taylor would convey the lots to him; that Taylor paid Bowlin nothing for the lots; that Taylor refused to convey the lots to him, but consented to convey them to his wife, who was Taylor's sister; and that the witness procured the deeds to be written, and took a justice of the peace to Taylor's, and Taylor then made the deeds, and nothing was ever paid to Taylor for them. There was other testimony corroborative of this, going to show that Taylor held the lots for Wasson, and that Wasson was in embarrassed circumstances.

If a person who is insolvent or in failing circumstances purchases property with his own money and has it conveyed to another, that conveyance is void as to subsequent purchasers of the property from him. (Howe et al. v. Waysman et al., 12 Mo. 169.) The conveyance is fraudulent, and, as to purchasers and creditors, it is as if it had not been. The property continues to be his, and if he conveys it his vendee will acquire a good title. The case of Howe v. Waysman expressly decides that point. Therefore, when Wasson purchased the property from Bowlin with his own money, and had the deed taken in the name of Taylor to shield it from his creditors, no title vested in Taylor, but the property belonged to Wasson, and his conveyance to a purchaser for a valuable consideration would transmit the fee. The voluntary conveyance of Taylor to Mrs. Wasson was of no effect, and could not in anywise impair the right of the plaintiff's ancestor, who bought the title from the legal owner for a valid consideration. Taylor had no title, and his heirs, the defendants to this suit, who claim under him, have none.

An objection is taken in this court that the decree is not in accordance with the prayer in the petition. But that is una-

vailing, for the court, under our statute, may give any relief consistent with the allegations in the pleadings, without regard to what is asked for.

The petition asked for a correction of the deed for damages and for judgment for the possession of the land. The court refused the judgment for possession, and the plaintiffs appealed. The simple demand for damages was entirely disregarded by the court, and there was no evidence offered or given on that subject. It appears to have been carelessly inserted in the petition and was not relied on. We may therefore here consider it as mere surplusage, and treat the petition as a bill in equity to obtain title and nothing more.

In all cases that are strictly equitable the court may issue whatever process is necessary to enforce its decrees. Our statute provides that in all cases where judgment is given for the conveyance of real property, the court may by its judgment pass the title to the property, without any act to be done on the part of the defendant, and may issue a writ of possession, if necessary, to the sheriff to put the party entitled in possession, or may proceed by attachment or sequestration. (Wagn. Stat. 1056, §§ 27, 28.) This is simply declaratory of the old chancery practice and enunciates no new rules. There may be cases concerning real estate purely equitable in their character, where the court would possess the power to decree that the possession should be delivered up and surrendered. But it is improper to mingle a cause which is purely equitable with one that it is strictly legal in the same count in a petition, and proceed to try them together before a chancellor. But it does not thence follow that in all cases a party must first get his decree for title, and then bring a separate and independent action in ejectment to obtain possession. An intimation of this kind was thrown out in Peyton v. Rose, 41 Mo. 257, which has been followed in subsequent cases, but we think the doctrine has been too broadly stated. A plaintiff may unite in the same petition several causes of action, whether they be legal or equitable or both, if they arise out of the same transaction and are connected with the same subject of action. But where causes of action are thus united they must be separately stated, with the

relief sought for in each cause of action, in such manner that they may be intelligibly distinguished. (Wagn. Stat. 1012, § 2.) Under this provision of the statute the petition may embody a count in equity and a count at law, if they arise out of the same transaction and relate to the same subject-matter. But they should be separately stated and intelligibly distinguished, for they require separate trials and separate judgments. (Jones v. Moore, 42 Mo. 413.) Their joinder in the same count would be fatally defective. This is all that has heretofore been decided by the court, though expressions may have been used which extend the doctrine further. An examination of the case of Peyton v. Rose, and the cases that have followed that decision, will show that the pleaders had intermingled in their petition in one count a bill in equity for relief and a cause in ejectment for possession and for damages, and attempted to proceed with the whole case before the chancellor, and this we held they could not do, and we see no reason for changing our opinion. Had the petitions been drawn in accordance with the rules of pleading laid down in the code, and contained separate counts, with appropriate prayers for relief or judgment, as warranted by the law applicable to the different causes of action, a different question would have been presented. The code of procedure, authorizing the joinder of equitable and legal causes upon their separate statement in distinct counts, was passed for the purpose of preventing circuity of action and multiplicity of suits, but it applies simply to the form and manner of action, and was not designed to change any principle of law. Why the distinction must be kept up between legal and equitable proceedings is obvious to all. In an action at law there is a constitutional right of trial by jury which has no existence in equity. It seems to be conceded in all the States where the new system of pleading prevails, that where legal and equitable causes of action are united, as to the former, on the trial the issues must be submitted to the jury and cannot be passed upon by the chancellor.

In the present case there was no legal issue tendered. Although there was a prayer for damages, no attention was paid to it, and it was treated as surplusage. The bill was strictly equitable throughout, and the plaintiffs had no other remedy. When that

was the case, and the plaintiffs obtained their decree for title and showed that they were entitled to the possession, I think that the court should have given them a writ for that purpose.

This is the first time the question has been presented to this court in this shape; and so much of the judgment, therefore, as refused to put the plaintiffs in possession should be reversed, and the court below will be directed to award the writ. The other judges concur.