OTTILIE MARIE STEINWAY and Others, Infants, by OTTILIE C. RECKNAGEL, their Guardian ad Litem, Respondents, *v.* LOUIS VON BERNUTH, as Executor and Trustee of and under the Last Will of GEORGE A. STEINWAY, Deceased, and Others, Appellants.

*Equity — executor's accounting — the failure of the plaintiff to establish a conspiracy, where it is found that an executor was actuated by motives of self-interest in not resisting a claim against the estate, does not require the Supreme Court to remit the case to the Surrogate's Court — right to a trial by jury of the question of ownership of personal property — when waived — costs against the executor.*

June 24, 1895, Ottilie C. Steinway, the wife of George A. Steinway, left New York for North Dakota, for the purpose of securing a divorce from her husband, who was dissolute in his habits. Her action in this respect was approved by her husband's family, and, on the day that she left New York for North

Dakota, her husband's father, William Steinway, entered into a written contract with the said Ottilie C. Steinway, by which he agreed to pay to her, in quarterly installments, a yearly allowance during the minority of her three children for the support and maintenance of herself and such children.

In September, 1895, she obtained the decree of divorce and in the following December married one Recknagel.

William Steinway died November 30, 1896, leaving a will in which he nominated four executors, two of whom were Louis von Bernuth and the latter's wife, who was a daughter of William Steinway.

George A. Steinway died in September, 1898, leaving a will, of which the said Louis von Bernuth was appointed sole executor. By the terms of the will he gave his entire estate to his executor in trust for the maintenance and education of his three children, each of whom, upon attaining the age of twenty-one years, was to come into possession of one-third of the property.

Up to the time of the death of William Steinway, the installments due under the contract above mentioned were regularly paid to the former Mrs. Steinway, but after his death such payments were discontinued. In February, 1899, the former Mrs. Steinway brought an action against the executors of William Steinway to recover damages for the breach of the contract. The executors alleged, as a defense, the existence of certain claims against the estate of George A. Steinway.

Until May, 1900, Louis von Bernuth, as executor and trustee under the will of George A. Steinway, applied the income of the trust estate to the education and maintenance of the testator's children. On the latter date he declined to make any further advances for that purpose, alleging, as his reason therefor, that the executors of William Steinway had made a claim against him as executor of George A. Steinway involving substantially all of the residuary estate of the latter then in his possession, and that he could not make further payments without incurring the risk of financial responsibility.

The wife of the said Louis von Bernuth was entitled to one-fifth of the residuary estate of William Steinway and was consequently financially interested in the assertion of the claims against the estate of George A. Steinway.

Subsequently, and during the pendency of the action brought by the former Mrs. Steinway against the executors of William Steinway, to recover damages for the breach of the contract before referred to, the three children of George A. Steinway brought an action in the Supreme Court against all the parties in interest to secure a complete adjustment of the controversy. The complaint demanded as relief that the executors of the will of William Steinway be adjudged to have no valid claim against the estate of George A. Steinway; that the defendant Louis von Bernuth render an account of his proceedings as executor of George A. Steinway, and that the same be judicially settled and that the plaintiffs have such other and further relief as might be just and proper.

The complaint alleged that the assertion of the claims against the estate of George A. Steinway was the result of a conspiracy between the executors of the estate of William Steinway and the executor of the estate of George A.

. Steinway, the purpose of which was to compel an abandonment of the action brought by the plaintiff's mother against the executors of William Steinway for the breach of the contract made by him; that by reason of such conspiracy there was "great and imminent danger of delay in the final determination of said pretended claims and of the enjoyment by these plaintiffs of any income or other means of support from the residuary estate of said George A. Steinway, deceased, to which they are entitled, as well as of the ultimate deprecia-tion, waste and possible loss of the entire principal of said estate, to the irre-parable injury of these infant plaintiffs, who are wholly without adequate remedy at law in the premises."

The court found that the claims presented by the executors of William Steinway against the estate of George A. Steinway were without merit and void, but declined to find that there was a conspiracy between the defendant Louis von Bernuth and his coexecutors. Upon this subject the court found in substance that, while Louis von Bernuth was actuated by motives of self-interest in aid-ing in the assertion of the claims against the estate of George A. Steinway and in not properly resisting the same, there was sufficient ground for the claims to justify their assertion by those executors of William Steinway, who had no personal interest in the claims and owed no trust duties to the children of George A. Steinway.

*Held*, that the failure of the plaintiffs to establish a conspiracy in a strict legal sense did not require the Supreme Court to abandon jurisdiction of the action and remit the plaintiffs to the Surrogate's Court for relief;

That, as the action was one in equity, the fact that the complaint alleged a conspiracy and that the litigation involved the ownership of certain stock in the Steinway & Sons corporation, did not entitle the defendants to a jury trial;

That, if the defendants were entitled to a jury trial of any specific question of fact, they must be deemed to have waived such right by failing to apply, under section 970 of the Code of Civil Procedure, for an order directing such a trial;

That, under the circumstances, it was proper for the court to award costs against the defendant Louis von Bernuth personally.

APPEAL by the defendants, Louis von Bernuth, individually and as executor and trustee of and under the last will of George A. Steinway, deceased, and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 24th day of June, 1902, upon the decision of the court, rendered after a trial at the Kings County Special Term, adjudging that three certain claims, asserted by the executors of the estate of William Steinway, deceased, against the executor and trustee of the estate of George A. Steinway, deceased, have no foundation or validity.

*John Delahunty,* for the appellant Louis von Bernuth.

*Ernest Hall* and *Frederick W. Yates,* for the appellants Steinway and others, as executors, etc., of William Steinway, deceased.

*R. Burnham Moffat,* for the respondents.

WOODWARD, J.:

The plaintiffs in this action are the infant heirs of the late George A. Steinway, who died on or about the 14th day of September, 1898, leaving a last will and testament bearing date February 6, 1897, in and by which he nominated, constituted and appointed his cousins, Charles H. Steinway and Frederick T. Steinway, and his brother-in-law, Louis von Bernuth, as executors and trustees thereunder. The will was admitted to probate by the surrogate of the county of New York on the 27th day of October, 1898, and letters testamentary were issued to Louis von Bernuth, the other executors and trustees having failed to qualify, and since that time the said Louis von Bernuth has acted as sole executor under the will. By the provisions of the will above mentioned the entire estate was vested in the executors in trust for the plaintiffs in this action, who were to be maintained and educated, and, upon arriving at the age of twenty-one years, respectively, were to come into possession of a one-third interest in the property. There were provisions for vesting the estate in the event of the death of any of the plaintiffs, but these are not material to the questions presented upon this appeal. From the date on which letters testamentary were granted in 1898 to the 1st day of May, 1900, Louis von Bernuth, who had reduced to possession the property left by the late George A. Steinway, applied portions of the income of the estate to the education and maintenance of the infant plaintiffs, making payment thereof to their mother, Ottilie C. Recknagel, as the general guardian of their persons and property. On the date last above mentioned the defendant Louis von Bernuth declined to make further advances toward the education and maintenance of these plaintiffs, alleging as a reason and justification for such refusal that the executors of the will of the late William Steinway, father of the late George A. Steinway, had, during the month of April, 1900, made a claim or claims against him as sole executor of the will of George A. Stein-

way, deceased, involving substantially all of the residuary estate then in his possession, and that he could not, without incurring financial responsibility, which he was unwilling to incur, make any further payments from said residuary estate. The plaintiffs bring this action, not, as some of the defendants seem to suppose, to recover chattels, but for the purpose of fixing the amount of the estate in the hands of their trustee, and to prevent its sacrifice through the conflicting interests which are represented by the person who is acting as such trustee. For an understanding of the questions involved it is necessary to go into the history of the family to some extent.

George A. Steinway was born on June 4, 1865, and on the 17th day of April, 1888, married Ottilie C. Roesler, who was at that time about seventeen years of age. From 1892 to 1894 he and his wife resided in the house of the latter at Great Neck, Long Island, but George was dissolute in his habits and the home was broken up, the latter going to a sanitarium at Mamaroneck, where he remained until July, 1895. In the meantime, and, as it appears, with the approval of her husband's family, the wife determined to secure a divorce. On the 24th day of June, 1895, she left New York for Fargo, N. D., where, in September of that year, a divorce was granted her, George A. Steinway personally appearing by his attorney in the action. On the 28th day of December, 1895, she married her present husband, Carl L. Recknagel, Jr. On the day that Mrs. George A. Steinway left New York for North Dakota, William Steinway, father of George, entered into a written contract with his daughter-in-law, the present Mrs. Recknagel, whereby he agreed to pay her in quarterly installments the sum of $6,000 per year until July, 1898, and $7,500 in each year thereafter until the youngest or last survivor of her three children should attain the age of twenty-one years, the money so paid to be applied by the daughter-in-law to her support and maintenance and to that of the three little children. It was agreed that Mrs. Recknagel should have the custody and control of the children; that she should be supported out of the fund, and that she should not be called upon to explain or account for any of the moneys so received by her, the spirit of the contract evidencing the largest possible confidence in the mother of the children and an intent on the part of William Steinway to discharge to

the fullest extent the neglected financial duties of his son to his wife and children, and this contract was ratified and confirmed by the will of William Steinway, made and executed on the 12th day of July, 1895. During the lifetime of William Steinway, and up to his death, which occurred on the 30th day of November, 1896, these quarterly installments under this contract were duly made, four of them being paid subsequent to the marriage of his daughter-in-law to Mr. Recknagel. After the death of William Steinway these payments practically ceased, Mrs. Recknagel receiving only small sums on account, and on the 10th day of February, 1899, something over two years having elapsed, she brought an action in New York county to recover damages for the breach of the contract. She was the sole party plaintiff in this action, and the only defendants were the executors under the will of William Steinway and the two trustees named in the contract of June 24, 1895. Issue was joined upon the merits by service of answers to the amended complaint on April 11, 1900, and among the matters alleged in defense were some of the alleged claims against the estate of George A. Steinway. This action, involving in some measure the validity of the claims mentioned, is still pending and undetermined.

Under the provisions of the last will and testament of the late William Steinway, who died on the 30th day of November, 1896, Charles H. Steinway, Frederick T. Steinway, Louis von Bernuth and Paula Theoda von Bernuth became the executors and executrix of the estate of the said William Steinway, the said Louis von Bernuth being the same person who is the sole acting executor and trustee of the late George A. Steinway, and who joined with his coexecutors and executrix in the defense interposed in the New York county action mentioned above. Paula Theoda von Bernuth is the wife of Louis von Bernuth, and as the daughter of the late William Steinway is entitled to a one-fifth interest in the residuary estate of the latter, so that if the claims asserted by Louis von Bernuth, his wife and the other executors of the will of William Steinway against Louis von Bernuth as executor of the estate of George A. Steinway, amounting to from $50,000 to $125,000 as variously estimated, it would result in seriously depleting the estate of George A. Steinway and the property interests of these plaintiffs, and correspondingly benefiting the estate of William Steinway and

the property interests of the von Bernuths. With this state of facts existing, and Louis von Bernuth refusing to provide for the education and maintenance of these plaintiffs out of their father's estate because of the claims which he, as one of the executors of William Steinway's estate, with his wife and his fellow-executors were asserting against the estate of George A. Steinway, while at the same time refusing to pay over the money provided for in the contract and will of William Steinway to the mother of these plaintiffs, the present action was brought to secure a complete adjustment of the controversy, all of the necessary parties being brought in. The complaint demanded that the defendants, executors and executrix of the will of William Steinway, be adjudged to have no valid claim or demand against the estate of George A. Steinway, deceased, and have no interest in any of the property constituting the residuary estate of said George A. Steinway; that the defendant Louis von Bernuth do render and state his accounts as executor of, and under the will of, George A. Steinway, deceased, and that the same may be judicially settled in this action; that the plaintiffs have such other and further judgment or relief in the premises as may be just and proper, and that the plaintiffs have costs, etc. The complaint alleges collusion or conspiracy on the part of the executors and executrix of the estate of William Steinway and the executor of the estate of George A. Steinway by an assertion of certain claims against the estate of the latter to compel an abandonment of the New York county action brought by the plaintiffs' mother, in which the plaintiffs have an interest, and that by reason of this conspiracy there is "great and imminent danger of delay in the final determination of said pretended claims and of the enjoyment by these plaintiffs of any income or other means of support from the residuary estate of said George A. Steinway, deceased, to which they are entitled as well as of the ultimate depreciation, waste and possible loss of the entire principal of said estate, to the irreparable injury of these infant plaintiffs, who are wholly without adequate remedy at law in the premises." The learned court at Special Term has found the facts in accord with the contentions of the plaintiffs, in so far as the merits of the claims are concerned, and an interlocutory judgment has been entered declaring the claims against the estate of George A. Steinway to be without merit and void, and directing that Louis

von Bernuth account as executor and trustee of the estate of George
A. Steinway. The defendants, executors and executrix of the estate
of William Steinway, and Louis von Bernuth, personally and as
executor of the estate of George A. Steinway, appeal from the
interlocutory judgment.

The learned court at Special Term, after hearing the evidence,
declined to find that there was a conspiracy between the defendant
Louis von Bernuth and his coexecutors, and it is urged that the ele-
ment of conspiracy being eliminated from the case, it presents
merely an action for an accounting, of which the Surrogate's Court
had jurisdiction, and that the case should have been sent to that
court for adjudication. Many authorities are cited in support of
the proposition that a court of equity ought not to retain jurisdic-
tion of an action for an accounting against an executor in the
absence of peculiar facts and circumstances tending to show that
full justice cannot be done in the Surrogate's Court, and we have
no doubt this is true, but we are of opinion that this case presented
matters which it was not proper to send to a court of limited statu-
tory jurisdiction to deal with. It is not essential to the jurisdiction
of equity that the conspiracy alleged shall be proved in the sense
that it would be required to be established in a criminal prosecution;
if a person occupying the relation of a trustee is shown to be con-
ducting himself in a manner inconsistent with his duties to the bene-
ficiaries of such trust, then it is the duty of a court of equity to take
jurisdiction and to render such judgment as the peculiar facts and
circumstances of the case, taking into view the interests of all par-
ties, shall warrant. In the case now before us the defendant Louis
von Bernuth was the executor and sole trustee of an estate; he was
the coexecutor of another estate of which his wife was an executrix
and residuary legatee, largely interested, and he was joining with
her in the assertion of claims against the estate of which he was the
sole executor, leaving the beneficiaries of the trust estate without
any adequate protection unless this was afforded by the courts. It
seems to us that the facts, while not amounting to a conspiracy in a
strict legal sense, were sufficient to justify a court of equity in tak-
ing jurisdiction to probe the matter, and having taken jurisdiction
it was proper to retain it and to afford the relief which the facts
demanded. "The grounds of my decision," say the court in its

decision, " are that the claims described in the complaint, and which were asserted by the executors of the will of William Steinway against the executor and trustee of the will of George A. Steinway, are not valid, and that the attitude of Louis von Bernuth as one of the executors of the will of William Steinway in asserting the said claims, was and is induced by the fact that his wife is one of the residuary beneficiaries under said will, and was and is inconsistent with and in violation of his duty in respect of such claims as sole executor and trustee under the will of said George A. Steinway." The court continues, not in exoneration of Louis von Bernuth, but of his coexecutors, as follows : " As there were fair reasons for the executors of William Steinway to make such claims, I find there was no conspiracy between the said defendant Louis von Bernuth and his said coexecutors to make such claims." That is, while Louis von Bernuth was actuated by motives of self-interest in aiding in the assertion of these claims and in not properly resisting the same, there was sufficient ground for the claims to justify the executors who had no such interests and no such duties to these plaintiffs in asserting the same. But even this much could not be determined until the evidence had been submitted; the facts on their face were suspicious; the parties were all related, and it was only after a careful investigation of all of the matters that this court could properly determine just how far the coexecutors of the defendant Louis von Bernuth were involved in his improper conduct as executor and trustee of the estate of George A. Steinway. It being conceded that a court of equity has concurrent jurisdiction in matters of accounting it would be absurd to say that the court which had thus probed into the matters, involving a long and expensive trial, was bound to abandon jurisdiction and turn the matter over to the Surrogate's Court just because the evidence did not convince the court that the misconduct of the principal defendant was shared by all of them. " The real purpose of the action," to quote the language of the court in *Fernandez* v. *Fernandez* (15 App. Div. 469, 471), " is not to procure an account and distribution of assets in the hands of the executors, but to invoke the power of a court of equity to interfere for the protection of the plaintiffs and to prevent the executor and a debtor of the estate alleged to be in collusion with the executor from despoiling the

estate. The jurisdiction the court has comes under the ordinary authority of a court of equity to protect beneficiaries of a trust against persons wrongfully and fraudulently dealing with the trust estate. That is a jurisdiction which cannot be exercised by the surrogate, for it does not pertain to him, but is vested in the Supreme Court alone." So in the case at bar, the plaintiffs are not so much interested in the mere matter of an accounting; what they want to accomplish is to preserve the trust estate, and it appearing that the sole trustee is in a position which prevents him from acting impartially as one of the executors of an estate in which his wife is interested, a court of equity is properly invoked to prevent wrongful and fraudulent dealing with the trust estate. We held in this case on demurrer that the Supreme Court might retain jurisdiction and dispose of the matters involved (*Steinway* v. *Von Bernuth*, 59 App. Div. 261), and we find no reason to change our views, but much to confirm the jurisdiction, in the case as it is now presented.

The proposition is likewise urged that as the complaint alleged a conspiracy, and the litigation involved the ownership of certain stock in the Steinway & Sons corporation, the defendants were entitled to a trial by jury. Replying to a similar contention, the court, in the recent case of *Miller* v. *Edison Electric Illuminating Company* (78 App. Div. 390), say: " A suit properly constituted as one in equity is not, and never was, one to which the constitutional provision with reference to a trial by jury could apply, and the provision of the Code of Civil Procedure contained in section 968 which requires an action 'for a nuisance' to be tried by a jury the same as an action of ejectment, dower, waste or to recover a chattel, applies only to the 'action for a nuisance' which is authorized by section 1660 of the Code of Civil Procedure, and that is purely a common-law action." If the defendants desired the trial of any specific questions of fact, and were entitled to the same, they must be deemed to have waived this right by not complying with the provisions of section 970 of the Code of Civil Procedure, it not being pretended that they applied to the court, upon notice, for an order directing the trial of the same. This is not an action for the recovery of a chattel; the plaintiffs merely ask to have it adjudged that certain property in the hands of their trustee belongs to the estate of George A. Steinway, as it was conceded to have belonged

to his estate for nearly two years after his death, and the charge of conspiracy is only a part of the equitable cause of action asserted in the complaint.

We have carefully examined the evidence, aided by the very full and complete discussion in the appellants' brief, without being able to reach a different conclusion from that of the learned court at Special Term. While the 500 shares of stock in the Steinway & Sons corporation, the principal matter in controversy here, appear to have been dealt with somewhat informally, there is nothing in the evidence to rebut the presumption that stock issued in the name of an individual, the dividends of which are credited to his account and drawn upon by him, belong to his estate, and the burden of proving the contrary is upon those asserting the claim against the estate of George A. Steinway. William Steinway died in November, 1896; his son, George A. Steinway, survived him nearly two years, and during that time there was no suggestion that the stock in question did not belong to him. George died in September, 1898, and the stock went into the possession of his executor, Louis von Bernuth, who was also one of the executors of the will of William Steinway, and no question was raised as to the ownership of the property until April, 1900, after the mother of these plaintiffs had brought an action to compel the executors of the estate of William Steinway to comply with the terms of the latter's will, ratifying the contract of June 24, 1895, heretofore mentioned. It does not appear from the evidence that a single fact came to the knowledge of the executors of the will of William Steinway in April, 1900, which was not known to them at all times following the death of their testator in 1896, which had any bearing upon the ownership of this stock. Having acted upon the theory that the stock was the property of George A. Steinway, for more than three years, with full knowledge of all the facts, and the defendant Louis von Bernuth having taken possession of the property in violation of his duty as an executor of the will of William Steinway, if his present attitude is correct, the proof would have to be much stronger than that which has been spread upon the record now before us to establish that George A. Steinway did not own this stock at the time of his death, and that it does not now belong to his trustee for the benefit of his children. There are many facts and circumstances, not neces-

sary to be here noted in detail, that go to establish that these claims against the estate of George A. Steinway are without foundation, and the interlocutory judgment is fully supported by the evidence.

The defendant Louis von Bernuth urges that he should not be burdened personally with the costs of this action. There certainly is no good reason why the plaintiffs in this action, who have been obliged to invoke the aid of a court of equity to prevent the defendant from sacrificing their trust interests, should be compelled to pay the costs, either personally or out of the funds which they have preserved to the estate, and as the learned court at Special Term has not implicated the coexecutors in the wrongdoing, there would appear to be no one else upon whom the burden may properly fall.

The interlocutory judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., BARTLETT and HIRSCHBERG, JJ., concurred; JENKS, J., not sitting.

Interlocutory judgment affirmed, with costs.